# United States Court of Appeals

# FOR THE EIGHTH CIRCUIT

_____

No. 96-3190

_____

| | | |
|---|---|---|
| In re John C. Bestrom, debtor. | * | |
| | * | |
| John C. Bestrom, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Bankers Trust Company, as | * | District of Minnesota. |
| Trustee for Holders of DLJ | * | |
| Mortgage Acceptance Corp., | * | |
| Mortgage Pass-Through | * | |
| Certificates, Assignee of | * | |
| Mortgagee, Quality Mortgage | * | |
| USA, Inc., | * | |
| | * | |
| Appellee. | * | |
| | * | |

_____

Submitted: March 12, 1997

Filed: May 29, 1997

_____

Before MAGILL,[1] MURPHY, Circuit Judges, and GOLDBERG,[2] Judge.
_____

GOLDBERG, Judge.


Appellant John C. Bestrom ("Bestrom") seeks to rescind his mortgage agreement under the Truth In Lending Act, 15 U.S.C. §§ 1601 et seq. (1994) ("TILA"), without repaying the mortgage lender.  Bestrom contends that he should not be required to repay the loan principal as a condition of exercising the recission rights under TILA because the lender failed to provide him with notice of his right to rescind the mortgage within 3 days of the consummation of the transaction, as required under TILA, 15 U.S.C. § 1635(a), 12 C.F.R. § 226.15(b).


In an adversary proceeding filed by Bestrom against Bankers Trust Company, assignee of Quality Mortgage USA, Inc. ("Quality Mortgage"), the bankruptcy court[3] denied Bestrom's motion for summary judgment on the grounds that TILA did not apply.  The bankruptcy court found that the pre-bankruptcy loan made by Quality Mortgage constituted an acquisition loan to obtain title from the prior mortgage holder, First Bank, N.A. ("First Bank"), to whom Bestrom was already in default.  Acquisition loans are specifically excepted from the recission provision of TILA.  15 U.S.C. §

---

[1]The Honorable Frank J. Magill, was an active judge at the time that this case was submitted and assumed senior status on April 1, 1997, before the opinion was filed.

[2]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

[3]The Honorable Nancy C. Dreher, United States Bankruptcy Court Judge for the District of Minnesota.

1635(e)(1)(A). Bestrom appealed the bankruptcy court's decision to the district court, and, on July 16, 1996, the district court affirmed.[4]

In the instant appeal, Bestrom continues to argue that TILA applies to the loan transaction. Bestrom contends that the loan was not for the purpose of acquiring title to the property because First Bank never had legal title to the property in the first place. Therefore, as a matter of law, the Quality Mortgage loan that Bestrom used to pay down First Bank's mortgage could not have been an acquisition loan within the meaning of TILA. Rather, according to Bestrom, the transaction was a refinancing of the property. We find that First Bank did have legal title to the property, and therefore, we affirm the district court.

## I.

In 1976, Bestrom obtained a loan from First Bank to build his home ("the property"). At that time, he executed a security agreement and mortgage in favor of First Bank. As a result of financial difficulties, Bestrom defaulted on the payments to First Bank. First Bank commenced foreclosure proceedings in early 1993, which resulted in the bank purchasing the property at a publicly held auction on April 6, 1993. On the same day, First Bank recorded the Certificate of Sale in the Hennepin County Registrar of Titles. The public sale triggered Bestrom's state law rights under Minn. Stat. Ann. § 580.23, subd. 1 (West 1988), to redeem the property within six months from the date of sale if Bestrom repaid the original loan.

After the public sale, Bestrom and First Bank entered into several written agreements extending his state law rights of redemption in order to permit Bestrom to obtain the necessary financing to redeem the property. The last written agreement

---

[4]The Honorable Michael J. Davis , United States District Court Judge for the District of Minnesota.

extended Bestrom's rights of redemption to December 30, 1993. Bestrom failed to redeem the property, and, pursuant to Minn. Stat. Ann. § 580.12 (West 1988), the recording of the sale certificate operated as a conveyance to First Bank "of all the right, title, and interest" in the property upon expiration of the statutory period of redemption.

On January 4, 1994, First Bank sought to gain possession of the property by commencing an unlawful detainer action in state court against Bestrom as a hold-over tenant. On January 20, 1994, the court issued a writ of restitution, which entitled First Bank to eject Bestrom from the property.

During the state court proceedings, First Bank and Bestrom continued to discuss the possibility of Bestrom repurchasing the property. On January 25, 1994, Bestrom successfully completed the closing of a new loan from Quality Mortgage and began to execute a series of transactions designed to transfer the mortgage from First Bank to Quality Mortgage. Using the proceeds of the Quality Mortgage loan, Bestrom gave First Bank $285,000 to pay off the first mortgage. In return, First Bank conveyed its interest in the property to Bestrom by quit claim deed. Bestrom also borrowed an additional $85,222 from Quality Mortgage in order to satisfy a subordinate mortgage held by Citicorp and to pay the closing costs. Bestrom then executed a Mortgage (the "Mortgage") and an Adjustable Rate Note (the "Note") in favor of Quality Mortgage, thereby pledging the property as collateral.

In connection with the loan agreement, Quality Mortgage prepared a federal Truth-In-Lending disclosure statement dated January 11, 1994. On January 18, 1994, Bestrom, who was represented by legal counsel at the time, signed a waiver of his TILA rights to rescind the Note and the Mortgage within 3 days of the signing of the loan agreement. Prior to the closing of the loan, Quality Mortgage again provided Bestrom with a federal Truth-in-Lending disclosure statement, dated January 20, 1994, which set forth the terms of the loan. This second disclosure statement did not give Bestrom notice of any TILA rights to rescind or cancel the transaction.

On April 15, 1994, Quality Mortgage assigned its interest in the Note and the Mortgage to Bankers Trust. Bestrom made four monthly mortgage payments under the Note and the Mortgage and then defaulted. Bankers Trust foreclosed its interest in the Mortgage and purchased the property at a publicly held sale on January 27, 1995.

The second foreclosure and public sale caused Bestrom to take a number of legal actions designed to protect his interest in the property. By letter dated July 12, 1995, Bestrom attempted to exercise his federal rights to rescind the Mortgage transaction pursuant to TILA. On July 27, 1995, the date that his state law six-month period of redemption was due to expire, Bestrom filed for relief under Chapter 7 of the Bankruptcy Code, identified the property as his homestead, and claimed an exemption in it. On August 30, 1995, Bestrom filed this adversary proceeding against Bankers Trust, alleging that as a result of Quality Mortgage's failure to provide him with notice of his right to rescind the January 25, 1994 Mortgage in violation of TILA, 15 U.S.C. § 1635(a), 12 C.F.R. § 226.15(b), the court should void the mortgage security interest, not require Bestrom to repay the loan, and award him penalties, costs and attorneys fees under 15 U.S.C. § 1640.

The bankruptcy court held that TILA did not apply to the Mortgage transaction between Bestrom and Quality Mortgage because the court found that the loan was excepted from TILA's coverage under 15 U.S.C. § 1635(e)(1)(A). This provision excepts a "residential mortgage transaction," which is defined as "a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w).

The bankruptcy court determined that the loan transaction between Quality Mortgage and Bestrom came within the scope of the residential mortgage transaction exemption because Quality Mortgage's loan was used to pay off the mortgage held by First Bank so that Bestrom could acquire title to the property.

## II.

Bestrom's appeal rests on whether title to the property passed to First Bank as a result of the April 6, 1993 public sale, and whether title was re-acquired by Bestrom from First Bank as a result of the series of transactions commenced on January 25, 1994. We review the bankruptcy court's legal conclusions with respect to this issue de novo. Miller v. Farmers Home Administration (In re Miller), 16 F.3d 240, 242-43 (8th Cir. 1994).

Under Minnesota law, the rule is that once a purchaser acquires a property at a public sale and the redemption period expires, no further conveyance is necessary for the title to vest legally and equitably in the purchaser:

> The certificate shall be recorded within 20 days after such sale, and when so recorded, upon expiration of the time for redemption, shall operate as a conveyance to the purchaser or the purchaser's assignee of all the right, title, and interest of the mortgagor in and to the premises named therein at the date of such mortgage, without any other conveyance.

Minn. Stat. Ann. § 580.12 (West 1988).

In Johnson v. First National Bank of Montevideo, 719 F.2d 270, 276 (8th Cir. 1983), we stated:

> It is long-settled under Minnesota Law that foreclosure extinguishes the mortgage and that the purchaser at the foreclosure sale acquires a vested right to become the absolute owner of the property upon expiration of the redemption period, or, in lieu thereof, to receive the payment of the purchase price plus

interest.  <u>In Re Klein</u>, 9 F. Supp. 57, 59 (D. Minn. 1934); <u>In Re Stacy</u>, 9 F. Supp. 61, 64 (D. Minn. 1934), and cases cited therein.  The mortgagor, on the other hand, retains only the equity of redemption, plus the rights to possession, rents, and profits of the property during the period of redemption.  <u>Id.</u>

<u>See</u> <u>also</u> <u>Farmers and Merchants Bank of Preston v. Junge</u>, 458 N.W.2d 698, 700 (Minn. Ct. App. 1990) ("It is established law that title to property purchased at a mortgage foreclosure vests upon expiration of the redemption period.").

In the present case, First Bank gained title to the property because, after purchasing the property at the April 6, 1993 public sale and recording the certificate of sale the same day, Bestrom failed to redeem the property within the six month period of redemption.  Thus, under Minn. Stat. Ann. § 580.12, First Bank acquired "all the right, title, and interest" in the property on October 6, 1993, the date that the statutory period of redemption expired, or on December 30, 1993, the date to which Bestrom's statutory rights of redemption were extended by agreement of the parties.  No further conveyance was necessary.  Minn. Stat. Ann. § 580.12.  Therefore, First Bank held legal title to the property before the series of transactions, initiated on January 25, 1994, between Bestrom, First Bank and Quality Mortgage.

Bestrom, nevertheless, contends that title never passed to First Bank after the April 6, 1993 sale because First Bank did not obtain a court order prior to registering title.  Bestrom mistakenly relies on <u>United States v. Ryan</u>, 124 F. Supp. 1 (D. Minn. 1954), for support.  <u>Ryan</u> involved the perfection of federal tax liens on real property under the title registration system in Minnesota.  <u>Ryan</u> ruled that the Minnesota Registrar of Titles cannot recognize any involuntary transfer of property unless and until the Registrar receives a court order directing a particular action.  <u>Ryan</u>, 124 F. Supp. at 5.

Bestrom is incorrect that passage of title following a foreclosure sale is contingent upon registration pursuant to a court order. First, the case upon which Bestrom relies for this position, Ryan, is inapposite to the present case because it involved perfection of federal tax liens, rather than transfer of title after a foreclosure sale.

Second, Bestrom's position conflicts with Minnesota's statute governing registration after foreclosure sales. According to Minnesota's statute,

> Any person who has, by an action or other proceeding to enforce or foreclose a mortgage, lien, or other charge upon registered land, become the owner in fee of the land, or any part thereof, may have the title registered.

Minn. Stat. Ann. § 508.58 (West 1990).

The plain language of Minn. Stat. Ann. § 508.58, clearly provides that a party who has become the owner of property following a mortgage foreclosure "may" subsequently register the title. Thus, even if the purchaser has not acquired a new certificate of title, the purchaser already possesses legal title to the property. Title fully vests when the statutory redemption period expires. See Johnson v. First National Bank of Montevideo, 719 F.2d 270, 276 (8th Cir. 1983).

Therefore, the court holds that First Bank held legal title to the property at the expiration of the redemption period. The bankruptcy court and district court ruled according to law when they determined that the loan from Quality Mortgage was to acquire title to the property from First Bank and, therefore, TILA does not apply to the transaction.

### III.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.